UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN PATRICK EMERICK,

       Petitioner,

v.

JERI-ANN SHERRY,

       Respondent.

_____/

Civil Action No. 08-CV-14018

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING IN PART A CERTIFICATE OF APPEALABILITY

Petitioner John Patrick Emerick has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The application challenges petitioner's state convictions for criminal sexual conduct. Respondent Jeri-Ann Sherry urges the court to deny the petition on the grounds that petitioner's claims are procedurally defaulted, lack merit, or are not cognizable on habeas review. The court agrees with respondent that petitioner is not entitled to relief.

## I.  Introduction

### A.  The Charges and Trial Testimony

Petitioner was charged in St. Clair County, Michigan, with seven counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. The charges arose from allegations that petitioner sexually abused his two daughters, T.E. and K.W., between 1988 and 1996 when the girls were under the age of thirteen.[1] As explained by the state

---

[1]  The court will refer to the complaining witnesses by their initials, as did the Michigan Court of Appeals.

court,

> [b]oth daughters testified at trial that their father engaged in repeated sexual acts with them. T.E. testified that the acts, including cunnilingus, fellatio, attempted intercourse and manual stimulation of him and by him, occurred from the time she was six until she was twelve, when she asked him to stop.  K.W., aged nine at trial, testified that the acts occurred from when she was about age four to age six. Defendant denied all charges, maintained that both his daughters had denied any sexual activity with him in 1997, and asserted that T.E. had been induced to fabricate charges against him.

*People v. Emerick*, No. 236065, 2002 WL 31947932, at *1 (Mich. Ct. App. Dec. 3, 2002).

T.E. also testified that, on one occasion, she saw petitioner on top of K.W.  From then on, she tried to keep K.W. near her to prevent petitioner from touching K.W.  She did not disclose the abuse for years because she loved her father and he had told her that he would go away for a very long time and that she would never see him again if she told anybody what occurred between them. She finally disclosed the abuse to her mother and to a police detective because she saw the pain in her sister and she started to see how the abuse was affecting her own life.  She was also tired of lying about the matter when her mother and stepmother asked her whether petitioner had ever touched her. She claimed that, even though she lied for years to protect petitioner, she no longer wanted him to hurt anybody else.  She wanted him to get help and to see that what he was doing was wrong and should never have happened.

K.W. testified that petitioner touched her in the wrong place and that it made her sad when he did it and when she talked about it.  Although she identified petitioner at trial, she did not want to look at him because he made her feel sad.

Christine Wickings, who was petitioner's girlfriend and later his wife, testified that she became suspicious of petitioner when she saw him come into the kitchen tying his bathrobe

while T.E. was in the back bedroom putting on her tights.  On another occasion, she saw petitioner come out of T.E.'s bedroom.  When she went in the bedroom, T.E.'s pajamas were around her neck. After the second incident, she talked to T.E., who eventually admitted that petitioner had touched her.  T. E. later denied that petitioner had touched her, and when Ms. Wickings confronted petitioner with her suspicions, he denied doing anything to T.E.  He also threatened to take K.W. from Ms. Wickings if she said anything to his wife, Carla Emerick.

Petitioner's son testified that petitioner often treated T. E. more favorably than him and that there were times when petitioner would ask him to go outside while petitioner and T.E. remained inside.  After he came back inside the house, he would see petitioner and T.E. exiting petitioner's bedroom.  Sometimes petitioner would be in his bathrobe, and T.E. would be in her nightgown.  He became suspicious of petitioner after he overheard a conversation between T.E. and her best friend and noticed that T.E. appeared to be afraid of petitioner.

The defense witnesses consisted of Gary Ross, Detective Elaine Butts, and petitioner. Ross testified that, when he asked T. E. what was going on with her father, T.E. informed him that her mother and Chris wanted her to lie about what was going on and that she did not want to get her father in trouble and would not lie.

Detective Elaine Butts testified that Christine Wickings brought the matter to her attention in the fall of 1997.  Detective Butts spoke with K.W. in 1997 and asked K.W. whether her father or anyone else had ever touched her private area.  K.W. denied that anything was going on. However, in May of 2002, K.W. provided information similar to her testimony at trial.  The information led to the filing of charges against petitioner.

Petitioner acknowledged being the father of both T.E. and K.W., but he denied doing

the things about which T.E. and K.W. had testified.  Nicole Wickings testified on rebuttal that she and T.E. were best friends and that T.E. once told her that her father had touched her and that she (T.E.) was never going to tell anyone.  T.E. also asked Nicole not to tell anyone.  According to Nicole, T.E. stated on a different occasion that Christine Wickings wanted T.E. to come forward and say something about petitioner touching her, but that T.E. did not want to come forward, because she did not want to get her father in trouble.  T.E. did not say that the allegations were untrue.

## B.  The Verdict, Sentence, and Direct Appeal

On June 22, 2001, a St. Clair County Circuit Court jury found petitioner guilty, as charged, of seven counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration of a person under the age of thirteen), and one count of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(a) (sexual contact with a person under the age of thirteen).  Four of the first-degree charges involved T.E.; the other four charges involved K.W.  The trial court sentenced petitioner to concurrent terms of 30 to 60 years in prison for the first-degree criminal-sexual-conduct convictions and 10 to 15 years for the second-degree criminal-sexual-conduct conviction.

Petitioner raised his first three habeas claims in an appeal of right.  The Michigan Court of Appeals rejected the claims and affirmed petitioner's convictions in an unpublished, *per curiam* opinion.  *See People v. Emerick*, No. 236065, 2002 WL 31947932 (Mich. Ct. App. Dec. 3, 2002).  The Michigan Supreme Court denied leave to appeal on May 30, 2003.  *See People v. Emerick*, 468 Mich. 916 (2003) (table).

## C.  The Motion for Relief from Judgment and Subsequent Appeals

On June 1, 2004, petitioner filed a motion for relief from judgment through his

4

2:08-cv-14018-BAF-DAS   Doc # 22   Filed 01/21/11   Pg 5 of 22   Pg ID 1413

attorney.  Counsel subsequently attempted to acquire videotapes of the trial and was told that he could view the tapes at the courthouse.  A confrontation with the trial judge ensued after the second viewing of the tapes.  Counsel then moved to disqualify the trial judge.  The trial judge denied the motion, and the chief judge denied a subsequent defense motion to disqualify all the judges on the circuit court bench.  Interlocutory appeals followed.  The Michigan Court of Appeals denied leave to appeal for failure to persuade the court of the need for immediate appellate review.  *See People v. Emerick*, No. 268307 (Mich. Ct. App. June 27, 2006).  The Michigan Supreme Court denied leave to appeal on December 28, 2006, because it was not persuaded to review the question.  *See People v. Emerick*, 477 Mich. 973 (2006).

        The trial court then denied petitioner's motion for relief from judgment, which alleged ineffective assistance of trial counsel, among other things.  Petitioner appealed the trial court's decision to the Michigan Court of Appeals, which denied leave to appeal for failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Emerick*, No. 284800 (Mich. Ct. App. July 22, 2008).  Petitioner did not appeal the court of appeals' decision to the Michigan Supreme Court.

## D.  The Habeas Petition and Answer

        Petitioner filed his habeas petition through counsel on September 18, 2008.  His claims, as set forth in an amended petition, are:

I.      The trial court's decision to allow "other bad act" evidence consisting of a 1985 out-of-state convictionless incident against Petitioner was an abuse of discretion which denied Petitioner his constitutional rights to a fair trial.

II.     A) The joinder of the two cases, i.e., that of [T.E.] and that of [K.W.] together in one information for purposes of charging Petitioner was a violation of the court rules and an abuse of discretion by the

prosecutor which denied Petitioner a fair trial; further B) counsel's failure to timely object and move for severance constituted the ineffective assistance of counsel which denied Petitioner his constitutional rights to counsel and a fair trial.

III.    Petitioner's constitutional rights to a fair trial were violated through the prosecutor's improper argument, which constituted misconduct designed to bias the jury against him.

IV.    While litigating his state collateral appeal, Petitioner discovered grounds for judicial disqualification based on the trial transcripts. Judicial personal bias, prejudice and animus then arose during discovery on the issue. The court denied recusal. The chief judge then denied Petitioner's requested referral to the state court administrator. Moreover, *sua sponte* denied recusal of the trial judge following *sua sponte* de novo review. Petitioner's constitutional rights to a fair hearing and impartial judicial officer were violated.

V.    Trial counsel's ineffectiveness before and during trial actually prejudiced Petitioner, violated his constitutional rights to counsel, fair trial and to present his defense. Counsel failed, inter alia, to investigate and present readily–available documentary and testimonial proofs which precluded jury consideration of Petitioner's former wife's vindictiveness that led to the unfounded and untruthful allegations of Petitioner's sexual abuse of his two daughters. Petitioner's convictions must be reversed.

Respondent argues in an answer to the petition that petitioner's first and fourth claims are not cognizable on habeas review, that petitioner's second claim lacks merit, and that his third and fifth claims are procedurally defaulted and lack merit.

## II.  Standard of Review

Habeas petitioners are not entitled to the writ of habeas corpus unless the state court's adjudication of their claims on the merits

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable

6

> determination of the facts in light of the evidence presented in the
> State court proceedings.

28 U.S.C. § 2254(d). Additionally, this court must presume the correctness of state court
determinations on factual issues. 28 U.S.C. § 2254(e)(1).

A state court's decision is "contrary to" clearly established federal law if the state
court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or
if the state court decides a case differently than the Supreme Court has on a set of materially
indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable
application" occurs when "a state-court decision unreasonably applies the law of [the Supreme
Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not issue the writ
simply because that court concludes in its independent judgment that the relevant state-court
decision applied clearly established federal law erroneously or incorrectly. Rather, that application
must also be unreasonable." *Id*. at 411.

### III. Discussion

### A. "Other Acts" Evidence

Petitioner alleges that the trial court's decision to allow the prosecutor to present
"other bad acts" evidence amounted to an abuse of discretion and deprived him of his constitutional
right to a fair trial. The "other bad acts" evidence consisted of petitioner's 1985 no-contest plea to
handling and fondling a child under the age of fourteen years in Florida. (Tr. June 22, 2001, at 647.)
The issue arose when the prosecutor asked petitioner on cross-examination whether people who
molested their children would do so in such a way that they would not be caught. Petitioner
responded that he could not answer the question because he did not know about child molesters.
The prosecutor then attempted to elicit testimony about petitioner's prior conviction. The prosecutor

7

maintained that petitioner's response to her question opened the door for her to discuss the prior

conviction. (Tr. June 21, 2001, at 608-23.) The trial court allowed the prosecutor to elicit evidence

of the prior misconduct for the purpose of testing petitioner's credibility. (Tr. June 22, 2001, 532-41

and 647-49.) Petitioner then admitted that he had pleaded no contest to the crime and had been

placed on probation for five years. (*Id*. at 649.)

> The Michigan Court of Appeals agreed with petitioner that the trial court abused its
discretion in admitting the evidence and that the evidence "was of such marginal value in
impeaching [petitioner's] testimony that the probative value was vastly outweighed by the potential
prejudice." *Emerick*, 2002 WL 31947932, at *1. The Court of Appeals nevertheless determined that
the error was not outcome determinative, given the trial court's cautionary instruction and the
complainants' testimony.

> This court finds no merit in petitioner's claim because

>> [t]here is no clearly established Supreme Court precedent which
holds that a state violates due process by permitting propensity
evidence in the form of other bad acts evidence . . . . While the
Supreme Court has addressed whether prior acts testimony is
permissible under the Federal Rules of Evidence, *see Old Chief v.
United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed.2d 574
(1997); *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496,
99 L. Ed. 2d 771 (1988), it has not explicitly addressed the issue in
constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003); *see also Bey v. Bagley*, 500 F.3d 514, 523

(6th Cir. 2007) (concluding that the petitioner's disagreement with the state court's ruling on "other

acts" evidence involved no constitutional dimension and, therefore, was not cognizable on federal

habeas review). Because no Supreme Court decision bars the use of propensity evidence on

constitutional grounds, the trial court's ruling and the state appellate court's order upholding the

ruling were not contrary to Supreme Court precedent.

Furthermore, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004), *citing Estelle v. McGuire*, 502 U.S. 62, 68-70 (1991). In other words, the court "cannot grant the writ based on [its] disagreement with 'state-court determinations on state-law questions,' unless the state-court determination is so 'fundamentally unfair' that it deprives a defendant of due process." *Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (internal and end citations omitted), *petition for cert. filed*, Nos. 10-865 and 10A372 (U.S. Dec. 30, 2010).

Evidence that petitioner pled no-contest to fondling a child under the age of fourteen was not fundamentally unfair, because the trial court read the following cautionary instruction to the jury:

> You've heard evidence that was introduced to show that the Defendant was previously involved in an incident in Florida. This evidence was admitted for a limited purpose, that is, to consider whether you believe the Defendant testified as a truthful witness in response to the Prosecutor's witness-question. You must not consider this evidence for any other purpose. For example, you must not decide that it shows the Defendant is a bad person or the Defendant is likely to commit crimes. You must not convict the Defendant here because you think he is guilty of other bad conduct.

(Tr. June 22, 2001, at 727.) The trial court also read a lengthy jury instruction on how to evaluate the credibility of witnesses and charged the jurors not to let sympathy or prejudice influence their decision. (*Id.* at 715 and 719-21). Juries are presumed to follow their instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987). The court therefore concludes that petitioner's rights to due

process and a fair trial were not violated by the use of "other bad acts" evidence to impeach his credibility.

Further, the alleged error was harmless because the evidence against petitioner was substantial. The complaining witnesses' testimonies were corroborated by Brian Emerick, Christine Wickings, and Nicole Wickings, and there was a plausible explanation for why T.E. initially denied that the abuse had occurred. The alleged error could not have had a substantial and injurious effect or influence on the jury's verdict and was harmless. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

**B. Joinder of the Cases**

Petitioner next argues that the prosecution abused its discretion and violated the Michigan Court Rules by joining T.E.'s and K.W.'s cases in one criminal information. Petitioner also claims that the joinder denied him a fair trial and that his trial attorney's failure to timely object and move for a severance constituted ineffective assistance of counsel.

The Michigan Court of Appeals noted on review of petitioner's claim that Michigan Court Rule 6.120 allows for permissive joinder of offenses and for severance of charges on motion by the defendant. The court of appeals concluded that, in the absence of a defense motion to sever the offenses, the court rule was not violated and the prosecutor did not abuse his discretion. The court of appeals further concluded that defense counsel's failure to object and move for severance did not amount to ineffective assistance of counsel.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

10

*Estelle*, 502 U.S. at 67-68.

Although petitioner claims that he was denied his constitutional right to a fair trial, he has not shown that the state appellate court's decision was contrary to, or an unreasonable application of, any Supreme Court decision. This court must accept the state court's interpretation of the rules for joinder and severance of charges. *See Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007). To obtain federal habeas relief on this claim involving state law, petitioner must show that misjoinder of the counts resulted in prejudice so great that he was denied his right to a fair trial. *See id*. For the reasons that follow, the court concludes that petitioner has failed to satisfy this standard.

In Michigan, "[t]he prosecuting attorney may file an information or indictment that charges a single defendant with any two or more offenses . . . . Two or more informations or indictments against a single defendant may be consolidated for a single trial." Mich. Ct. R. 6.120(A). Further,

> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
>> (a) the same conduct or transaction, or
>> (b) a series of connected acts, or
>> (c) a series of acts constituting parts or a single scheme or plan.
>
> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

Mich. Ct. R. 6.120(B)(1) and (2).

It is unlikely that a motion to sever would have been granted in this case because the offenses in question were based on similar conduct, loosely connected acts (sexual abuse of child

11

victims in the same household), and a series of acts that arguably constituted a single scheme or plan. Petitioner's only complaint about the joinder of offenses is that "[t]he acts complained of involved two individual complaining witnesses, during two entirely different time frames." First Am. Pet. for Writ of Habeas Corpus, at 13. The trial court, however, charged the jury to consider each count of criminal sexual conduct as a separate crime (Tr. June 22, 2001, at 729), and the evidence was presented to the jury sufficiently clearly. There was little potential for confusion or prejudice stemming from multiple charges involving two complaining witnesses during different time periods.　　　There is some risk of prejudice

> whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible. *See, e.g., Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998). By allowing joinder of offenses, the possibility exists that a jury may use the evidence of one of the charged crimes to infer a general criminal disposition by the defendant; the jury also may confuse or cumulate the evidence of the various crimes charges. *See Lucero v. Kerby*, 133 F.3d 1299, 1314 (10th Cir. 1998). The prejudice that [the petitioner] must demonstrate, however, in order to justify a grant of a writ of habeas corpus is actual prejudice, not merely the potential for prejudice. *See Herring v. Meachum*, 11 F.3d 374, 377-78 (2d Cir. 1993).

*Davis v. Coyle*, 475 F.3d at 777. The Michigan Court of Appeals determined that, even if severance had been granted, the evidence pertaining to K.W. might have been admissible at T.E.'s trial to explain when T.E. first mentioned her father's abuse and perhaps to show a scheme or plan. This court therefore concludes that petitioner did not suffer actual prejudice as a result of the joinder of the offenses. The joinder was not so fundamentally unfair as to deprive petitioner of a fair trial.

　　　　Because joinder was proper, defense counsel was not ineffective for failing to move for severance of the two cases. As noted by the state court, "[c]ounsel may very well have concluded that rather than face two trials, [petitioner] would be better off trying to create reasonable

doubt in one jury, resulting in an acquittal of all charges." *Emerick*, 2002 WL 31947932, at *2.
Trial counsel was not ineffective for failing to file a meritless motion. *See Holmes v. United States*,
281 F. App'x 475, 482 (6th Cir. 2008).   In conclusion, defense counsel was not ineffective for
failing to move for severance of the offenses, and petitioner's constitutional rights were not violated
by the joinder of offenses.

## C.  The Prosecutor's Conduct

Petitioner argues that his constitutional right to a fair trial was violated by the
prosecutor's closing arguments, which he contends were designed to attack his character and
prejudice the jury against him.   The Michigan Court of Appeals noted that defense counsel failed
to object to the prosecutor's remarks.   The court of appeals opined that, even though the prosecutor's
remarks constituted improper character arguments, any prejudicial effect could have been cured by
a timely jury instruction.   The court of appeals also held that the disputed remarks did not deprive
petitioner of a fair trial, given the prosecution witnesses' testimony about the unusual living
arrangements in petitioner's household.

### 1.  Legal Framework

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."
*Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *citing Bowling v. Parker*, 344 F.3d 487, 512
(6th Cir. 2003).  To prevail on his claim, petitioner must demonstrate that the prosecutor's remarks
infected the trial with such unfairness as to make the resulting conviction a denial of due process.
*See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).   Even if the prosecutor's remarks were
improper or universally condemned, the court cannot reverse a conviction unless the remarks were
"'so flagrant as to render the entire trial fundamentally unfair.'" *Johnson v. Bagley*, 544 F.3d 592,

597 (6th Cir. 2008), *quoting Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006). Courts consider

the following four factors when deciding whether a prosecutor's improper acts were sufficiently

flagrant to warrant reversal: "(1) whether the evidence against the defendant was strong[;] (2)

whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3)

whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made

deliberately or accidentally." *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006), *citing United

States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001).

### 2. Application

During her closing argument, the prosecutor said:

> Now, the fact that he had a girlfriend and he got her pregnant
> in the Rawlins [Street] house while they're sharing a bedroom with
> the wife and the husband, hey, may be interesting information, maybe
> lends context to this whole scenario, but do I need to prove that
> beyond a reasonable doubt? No.

> *    *    *

> The fact that they lived in the Rawlins [Street] house and then
> on 12th Street and that they were part of almost communal living, it
> sounds like, sharing beds and people coming into the bedroom in the
> middle of the night and all this other stuff. . . . .

(Tr. June 22, 2001, at 690-91.)

Defense counsel stated in his subsequent closing argument that petitioner's household

on Rawlins Street was a dysfunctional one and a strange setup. He argued that the jury should not

convict petitioner simply because his living arrangements were strange. (*Id.* at 698.) The prosecutor

stated on rebuttal:

> The term "dysfunctional family" doesn't even get close. You
> can put any psycho-babble you want to put on this. This is a place
> where there were no boundaries.     There were no appropriate

14

boundaries in that home.  You know it and I know it.  Everybody in
this room knows it.  This Defendant saw nothing wrong with bringing
a buddy over to meet the family – his wife, his kids, his girlfriend
who has his kid, who's pregnant at the time living in the same bed
with them, her kids.  Apparently he didn't have any problem with that
being way off base.  So does this person have appropriate boundaries
when it comes to sexuality?  Is he a person that sees a sexual
relationship the way everybody else does?

(*Id*. at 710-11.)

Petitioner contends that his character and sexual inclinations were not an issue and
that the prosecutor's arguments were designed to inflame the jurors and persuade them to convict
him of the charged offenses on the basis of a sex-charged and alternative lifestyle.  The Michigan
Court of Appeals agreed with petitioner that the prosecutor's remarks went beyond a fair response
to defense counsel's dysfunctional-family argument and constituted improper character arguments.
The court of appeals nevertheless concluded that petitioner was not denied a fair trial, given the
testimony about the unusual living arrangements.

This court agrees that the prosecutor's remarks did not deprive petitioner of a fair
trial.  Prosecutorial misconduct can occur "[w]hen a prosecutor dwells on a defendant's bad
character to prove that he or she committed the crime charged . . . ."  *Cristini v. McKee*, 526 F.3d
888, 899-900 (6th Cir. 2008), *citing Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000), and
*Hodge v. Hurley*, 426 F.3d 368, 384 (6th Cir. 2005).  In this case, however, the prosecutor's remarks
about the dysfunctional household were a response to defense counsel's concession during closing
arguments that this was a dysfunctional family.[2]  Prosecutors ordinarily are "entitled to wide latitude
in rebuttal argument and may fairly respond to arguments made by defense counsel."  *Angel v.*

---

[2]  Defense counsel also conceded during trial that the living arrangements were "pretty
weird."  (Tr. June 21, 2001, at 520.)

*Overton*, 682 F.2d 605, 607-08 (6th Cir. 1982), *citing Donnelly v. DeChristoforo*, 416 U.S. at 637.

Even if the prosecutor's remarks about the dysfunctional family and unusual living arrangements were deemed an improper attack on petitioner's character and an unfair response to defense counsel's argument, the impropriety was not so flagrant as to deprive petitioner of a fair trial. In the first place, the trial court instructed the jurors that the attorney's statements and arguments were not evidence. (Tr. June 22, 2001, at 737-38.)

Secondly, although the remarks were deliberately made and not isolated, they likely did not mislead the jury or prejudice petitioner, given the testimony offered at trial. Brian Emerick testified that petitioner, his wife, and girlfriend were all living together on Rawlins Street and that he thought it was unusual at the time, but no one had provided him with an explanation. (Tr. June 20, 2001, at 214-15.)

T.E. testified that petitioner lived for a few years with his wife and girlfriend and that the three adults stayed in the same bedroom. (*Id*. at 269-70, 285, 353.) Christine Wickings testified that she not only shared a bedroom with petitioner and Carla Emerick, but that all three of them slept in the same bed. She moved out of the household for a while when she became pregnant with K.W. (Tr. June 21, 2001, at 482-84.) Even defense witness Gary Ross testified that petitioner was living with his wife and Ms. Wickings. (*Id*. at 547.)

The court concludes that the prosecutor's remarks were not so pronounced, persistent, or egregious as to permeate the entire trial and deprive petitioner of due process. The state court therefore reasonably determined that the error did not deprive petitioner of a fair trial. Petitioner is not entitled to a writ of habeas corpus on the basis of his prosecutorial misconduct claim.

**D. Judicial Bias**

16

Petitioner alleges that the trial judge and chief judge of the St. Clair County Circuit Court exhibited bias during post-judgment proceedings.  At the time, petitioner's attorney was investigating a claim of judicial disqualification during trial.  He was denied permission to take the videotapes of trial with him, but he was granted permission to view the tapes at the courthouse. During the second day of viewing the tapes, the trial judge allegedly berated counsel and accused him of wrongdoing.  Counsel then moved to have the trial judge recuse himself.  The trial judge denied the motion, and the chief judge denied petitioner's motion to refer the matter to the state court administrator.  The Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal.  Petitioner argues that the trial judge and chief judge arbitrarily denied him his right to have the disqualification issue heard.

Habeas relief may not be granted for alleged deficiencies in a state's post-conviction procedures because such claims relate to a state civil matter, not to the custody of a defendant.  *See Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002), *citing Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986).  Consequently, petitioner has no right to habeas relief on the basis of his contention that the trial court exhibited bias during post-conviction proceedings.  The claim is not a cognizable claim on federal habeas review.

To the extent that petitioner is claiming the trial judge was biased during trial, his claim lacks merit because his only allegation of judicial bias during trial is based on the trial court's conversations with the jury about his personal life and newborn granddaughter.  The record indicates that the trial court was merely chatting with the jurors during breaks in the testimony.  (Tr. June 20, 2001, at 326-27 and 378; Tr. June 21, 2001, at 476.)  There is no evidence of "a deep-seated favoritism or antagonism that [made] fair judgment impossible." *Liteky v. United States*, 510 U.S.

17

540, 555 (1994).  Therefore, petitioner has no right to relief on his claim of judicial bias.

**E.  Trial Counsel**

The fifth and final habeas claim alleges that petitioner's trial attorney was ineffective.
Specifically, petitioner alleges that his attorney failed to investigate and present readily available
proofs, which precluded jury consideration of petitioner's former wife's vindictiveness.  Petitioner
also alleges that his attorney (a) failed to object to the prosecutor's inflammatory comment during
jury selection, (b) failed to object to the trial judge's remarks about the judge's family, (c) gave an
ineffective opening statement, (d) failed to investigate, prepare, and present petitioner's defense, and
(e) failed to move *in limine* to suppress evidence of petitioner's 1985 sentence of misconduct
involving a child under the age of fourteen.

Petitioner first raised these claims in his motion for relief from judgment.  The trial
court determined that petitioner received effective assistance, and the Michigan Court of Appeals
denied leave to appeal the trial court's decision.  Petitioner did not raise the issue in the Michigan
Supreme Court.

The doctrine of exhaustion of state remedies requires prisoners in state custody to
give the state courts an opportunity to act on their claims before raising them in a federal habeas
corpus petition.  *See* 28 U.S.C. §§ 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).
The exhaustion requirement is satisfied if a prisoner "invok[es] one complete round of the State's
established appellate review process," including a petition for discretionary review in the state
supreme court "when that review is part of the ordinary appellate review procedure in the State."
*O'Sullivan*, 526 U.S. at 845, 847.  This means that a habeas petitioner must fairly present his claims
to the state court of appeals and to the state supreme court.  *See Wagner v. Smith*, 581 F.3d 410, 414

18

(6th Cir. 2009), *citing Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

        Petitioner did not raise his claims about trial counsel in the Michigan Supreme Court. However, he no longer has an available state remedy to exhaust because he has already filed one motion for relief from judgment in the trial court, and he is precluded from filing a second motion for relief from judgment, absent a retroactive change in the law or newly discovered evidence. Mich. Ct. R. 6.502(G)(2).  When, as here,

> a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted. *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002).  While in such situations the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts results in a procedural default of those claims that bars federal court review. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

*Pudelski v. Wilson*, 576 F.3d 595, 605 (2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010); *accord Gray v. Netherland*, 518 U.S. 152, 161 (1996) (explaining that the exhaustion requirement is satisfied if the habeas petitioner's claims are procedurally barred under state law because he no longer has an available remedy to exhaust); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) ("if no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts").

        To overcome a state procedural default, a habeas petitioner must show "cause" for his default and prejudice as a result of the alleged violation of federal law or demonstrate that the court's failure to consider the substantive merits of his claims will result in a fundamental miscarriage carriage of justice.  *Coleman*, 501 U.S. at 750.  "[T]he existence of cause for a

procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner argues that his attempt to file a timely application in the Michigan Supreme Court was thwarted by independent state action. A showing that some interference by officials made compliance with a state procedural rule impracticable would constitute "cause." *Id.*, *quoting Brown v. Allen*, 344 U.S. 443, 486 (1953)). However, exhibits to petitioner's reply brief indicate that his application for leave to appeal in the Michigan Supreme Court was late because his courier was delayed by heavy traffic and detours, which were the result of traffic accidents on the highway. The courier did not pick up petitioner's supreme court application in Huntington Woods, Michigan, until 2:00 p.m. on the last day for filing the application. He made one unrelated, 15-minute stop on his way to Lansing, Michigan, and arrived at the state supreme court at 5:05 p.m. He had previously been assured by a court employee that the filing deadline would be extended until 5:10 p.m. But by the time the security guard in the building was able to go to the clerk's office to determine whether anyone was still there, the supreme court's office was closed and no one was there.

It was the courier's tardiness or defense counsel's failure to get the application to him on time that caused petitioner to miss the filing deadline in the state supreme court. The courier or counsel for petitioner should have allowed for contingencies during the trip from Huntington Woods to the Supreme Court's offices in Lansing, a distance of approximately 81 miles. It is immaterial that the state prosecutor did not object to the filing of a tardy application, because the application was never filed, and the Clerk of the Michigan Supreme Court had no authority to waive the filing requirement. *See* Mich. Ct. R. 7.302(C)(3) ("Late applications will not be accepted.").

20

The court therefore finds that the tardy filing was not due to some interference created by state officials and that petitioner has not shown "cause" for his procedural default.

The court need not determine whether petitioner was prejudiced by the alleged constitutional errors, because he has not shown "cause" for his procedural default. *See Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003), *citing Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000). The narrow exception for fundamental miscarriages of justice is reserved for extraordinary cases in which the alleged constitutional errors probably resulted in the conviction of one who is actually innocent. *See Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray*, 477 U.S. at 496; *Rust*, 17 F.3d at 162. "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of the new evidence. *See House v Bell*, 547 U.S. 518, 538 (2006). Petitioner has not presented any new evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the court's failure to consider the substantive merits of his fifth and final claim.

## IV.  Conclusion

Petitioner's fifth claim is procedurally defaulted and his other claims either lack merit or are not cognizable on habeas review. The state courts' rejection of the claims did not result in decisions that were contrary to, or an unreasonable application of, Supreme Court precedent or an unreasonable determination of the facts. Accordingly, the petition for writ of habeas corpus is denied.

The court shall grant a certificate of appealability on petitioner's first three claims because reasonable jurists could disagree with the court's resolution of those claims or conclude that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The court declines to issue a certificate of appealability on the fourth and fifth habeas claims because the fourth claim is not cognizable on habeas review, and the fifth claim is procedurally defaulted. Reasonable jurists would not disagree. Accordingly,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability is issued as to petitioner's first, second and third claims, and that such a certificate is denied as to petitioner's fourth and fifth claims.

S/Bernarad A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: January 21, 2011
        Detroit, Michigan

I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

S/Carol Mullins
Case Manager to Judge Friedman

22